Field number 075016, National American v. United States The Supreme Court suggests that the surety would step into and be entitled to the benefits of all of the rights of the contractor and the subcontractor and the government. Yes, Your Honor. We believe that is why Blue Fox is significant to reconsideration of this issue and why the court in ICW also looked to Monsey Trust. Because in Blue Fox, the court looked at Perlman as it was relied upon by the subcontractors there, as well as Henningsen and Prairie State, and determined that those cases did not decide the liability of the United States. They never considered that question of sovereign immunity. And once those cases are no longer, if one can refuse those cases, they do not establish and do not consider the liability of the United States, the court is obliged then to- Well, there are two different issues. There's subrogation as an issue, and there is sovereign immunity as an issue. Blue Fox certainly talked about sovereign immunity and made it clear that Perlman and Henningsen and other cases don't necessarily stand for the sovereign immunity proposition. But I don't think that Blue Fox addressed at all or in any way undercut the statements in Perlman relating to subrogation. As to general principles of subrogation, no. But what we would ask the court to consider is that we're not asking for a different rule of subrogation. I would just stop at that point while we're on subrogation. I take you to tell me now, Mr. Maynard, that you agree that a surety can step into the shoes of the prime contractor under surety shift law. As a general- as that- I mean, I can cite you the restatement in example three in section 27. I can cite a host of cases. Certainly there are many decisions that make so whole that that is not consistent with the United States versus California's definition of what one takes by assignment or under one's trust that one takes the rights of the one that one pays. But more critically- You take a whole set of rights. I mean, I want to try to get clear. Under the law of surety shift standing alone, a surety can step into the shoes of a sub. They can step into the shoes of a prime or they can step into the shoes of the government as the case may be in order to do equity under subrogation, right? Where the United States is not a party, subrogation is recognized as a broad equitable right and evaluates the extra- Where the United States is a party, insurance company of the West says, where in a performance bond setting, where the surety steps into the shoes of the contractor, then through the Tucker Act there's a waiver of sovereign immunity. Yes, sir. And that's true. And I don't mean- I can't remember whether you petitioned for- or you did petition for re-hearing of that when I got lost, but so that's settled. So the question is simply a simple matter to me. If the surety steps into the shoes of the prime, okay, then they can pursue the claim that the prime contractor has, right? I have two points I would make. First, as the Court mentioned, insurance company of the West concerns the performance bond surety issue. We would assert that the payment bond issue is quite different because the nature of relationships are different. There is not a- in a performance bond situation, there is a contractual relationship that was being- that is defined there because the surety is assisting in the performance and stepping into the role of the contractor. Well, stop for a second. When you have a payment bond, the surety steps into the shoes of the contractor and makes good the claims of the subs. But in that- in so doing, it's not taking- Yes, and therefore consistent if we analogize to the final footnote in Insurance Company of the West, the analogy would be the relationships run from contractor to subcontractor. So as the Court found in a performance bond situation where the rights run from the United States to the contractor and the contractor to the United States because there is a contractual relationship, that's one case. Factually, the payment bond situation is quite different. The government has no interests that go to the subcontractor. The government has no obligation to pay the subcontractor. The subcontractor can walk up the job and the government can't do a thing about it. All the government's rights run to the contractor. So to come back to the point that in a payment bond circumstance, the interests can run between those parties that have a relationship, the contractor and the sub, the sub to the contractor. Are the parties to a performance bond different than the parties in a payment bond? Yes, and moreover, the Miller Act expresses and makes the purposes of those bonds very different. In this case, who were the parties to the payment bond? In the payment bond, the rights run between the sub and the contractor. Not who- I'm not asking you where the rights run. Who were the parties to the actual document that was signed? I believe it is the contractor and the surety for the benefit of the subcontractors. The United States has a Swansea Trust established as the government. Then that bond is established to benefit the subcontractors, not for the detriment of the United States. But it's a three-party agreement, correct? I beg to differ, Your Honor. It's not with the contractor, the surety, and the government? No, Your Honor. The government is not a party to that. The government is not a party to it at all? No, Your Honor. It's a requirement that the government specifies, but it is not contractually a party to that situation. That's the whole crux of why the subcontractor has no rights. The government is not a party to the performance bond either. Yes, it was, but insurance coming to the West wouldn't have to have it. But the government is a party to the performance relationship, and there are duties that run from the contractor to the United States. So when the surety acts on behalf of the contractor, those contractual rights may pass. In a payment bond situation, there are no interests that run between the United States and that subcontractor. There is no obligation of the United States to pay. The government owes no duty to the contractor to pay the subcontractor either. It's the contractor that has a relationship to the subcontractor. The government has a duty to pay the contractor. When under technical rights assuranceship, when the government is holding on to some money that doesn't belong to it, in equity, that person is bound not to mispay the money when they're on notice. That the surety has made good on a claim, and the surety wants the money paid to it. And that is akin to the equitable lien that exists at common law in the favor of subcontractors, rights that do not exist as against the United States. The government simply has no obligation. And to whose shoes does the surety step to get those rights? They step into the shoes of the contractor, don't they? The surety can sue the contractor. It can avail itself of the subcontractor's rights. The subcontractor presumably has a contract with its prime contractor, and those are the rights that the surety can vindicate. But the United States simply is not part of that contractor-subcontractor relationship, in lieu of any interest like that. But the United States in a performance bond isn't part of it either. The performance bond is designed to benefit the government to make certain that the contract gets performed. If there's a breach, then the surety either has to finish it him or herself, or hire somebody to do it. And those actions expressly under the terms of the Miller Act serve the United States and allow that contract relationship between government and contractor. Paying the subs serves the United States too, otherwise the contract doesn't get performed. No, it does not. The government has no interest with the subcontractor. It's the contractor that stands for that performance. Well, to get the work done, you need to ensure that the subcontractor is already available to work. I mean, there is some interest in the government. Obviously, you know, National America has made that argument, but that's not—we do not. We're not in a relationship with the subcontractor. We only have rights to enforce against one entity, and that is the contractor,  Mr. Manhart, assume for purposes of argument that there's no Blue Fox problem, that Blue Fox somehow doesn't deal with this. The court of claims back in 1973 in the United States Fidelity and Garrity, it squared, if you will, Muncie and Perelman, as I read it, and said that the surety steps into the shoes of anybody that it can step into the shoes with in the three-party relationship in order to vindicate its rights. Yes, it did. And the insurance company in the West panel was bound by that? Actually, well, USF&G is a case in which the surety had not completed and did not have a right of subrogation. The only holding in that case—I mean, I know we're talking about the reasoning of the case, but the holding in that case is the surety had no right of subrogation at all. But if we look at it, what USF&G did— Right. I mean, there was a whole series of cases after that, Newark Insurance, Balboa, Newark, all those cases behind it, all consistent with the way in which USF&G squared the cases up. Most of those cases concern issues of stakeholder interest where the government had disclaimed interest, just as that was found by the court in Blue Fox when it looked at the situation. Well, in this particular case, if the government hadn't paid the last money out, if it had it in its hands, it would be a disinterested stakeholder, right? That would be true, but which is why— The notions of equity are that if you were a stakeholder and you were notified, because up until the time the government passed the last 500 or whatever it was out under this arrangement to the defaulting prime, the government was on notice, I believe, of the surety and what the surety claimed their rights to be. Yes, I believe. But for the payment, the government would have been a stakeholder, just holding money that didn't belong to it, and then it would wait and see who had an equitable claim to it. But the key in a payment bond situation is the contractor has made performance. The government is obliged to pay an entity for completed and accepted work. It is not simply a stakeholder. It has a contractual duty that runs through its contractor to make payment. I see that my time has gone. All right, you've used all of your rebuttal time, but we'll restore three minutes if you need it. Thank you. We'll hear from National American. Thank you, Your Honor. May it please the Court, my name is Robert McGrady. I represent the FLE, National American Insurance Company. Good afternoon. I want to start with the jurisdictional aspect of ICW. The ICW case, the issue is very narrowly framed, that being whether or not a subrogee who steps into the shoes of a government contractor may rely upon the waiver of sovereign immunity provided by the Tucker Act. And actually, that issue is decided in favor of the subrogee. From my standpoint, ICW puts to rest a jurisdictional question, and the issue now becomes who steps into the shoes of the government contractor. More specific as it relates to this particular case, does a payment bond surety step into the shoes of the government contractor? Applying the conclusion in ICW, if it does, then it has jurisdiction under the Tucker Act. I don't think the government disagrees on that point. It doesn't sound like the government disagrees. And so now we're faced with the question, and I think this is the root problem, is the government's contention that a surety only acquires through equitable subrogation the rights of the party it pays, that it does not also acquire the right of the party whose debt it has discharged. And if you look at ICW, the government actually made that same argument in ICW in connection with a performance bond surety. The government says a performance bond surety only acquires the rights of the government, the party to whom it has made payment. It does not acquire the rights of the government contractor, the party whose debt it has discharged. That's the significance of footnote 3, as I see it in the ICW decision, is that the court, relying, of course, on two payment bond cases, Perlman and Balboa, the court rejects the government's argument. And for good reason. You acquire through equitable subrogation the rights of the party that you pay. You also acquire through equitable subrogation the rights of the party whose debt you have discharged, the government contractor. And when you step into the shoes of the government contractor, there is jurisdiction under the Tucker Act. The government in this case kind of puts a little twist on it. They're making the same argument, that we only acquire through subrogation the rights of the party that we pay, in this case, Innovative PBX's subcontractor. That's not correct. We also acquire the rights of Innovative PBX. We acquired, if you go back and read Perlman, also the rights of the subcontractor, also the rights of the government. Now the ICW comment, and I'm going to refer to it as a comment, I think is clearly dicta. There are seven decisions, I believe, in the Court of Federal Claims that characterize it as dicta. It's not essential to the ruling. There was not a payment bond surety before the court in ICW. The court did not have the benefit of briefing and argument on the extent of a payment bond surety's rights, what they acquire through equitable subrogation. That comment, as you mentioned, is not even attributed to Blue Fox. In other words, to the extent someone can argue that the comment in ICW was compelled by a change in the law, Blue Fox isn't cited in support of that remark in ICW. It goes back to Muncie Trust. Clearly, Muncie Trust doesn't say that. It's not at page 241 or any other page of the Muncie Trust decision. In no way does Muncie Trust stand for the proposition that a payment bond surety doesn't step into the shoes of the government contractor. That's a set-off case. It's not a stakeholder case. And actually, if you look at Muncie Trust, the issue of priority is analyzed. In all fairness to the comment, if maybe you got the page wrong, if you look at page 242 of Muncie Trust, you'll find the Supreme Court saying one who rests on subrogation stands in the place of one whose claim he has paid. That's a true statement. That's a true statement. You would say he also steps into the shoes of the party whose rights he's discharged. Yes, Your Honor. I think it's just an incomplete statement. That is an accurate statement. And as the law developed after Muncie Trust, certainly if you look at the Perlman decision and then you look at USF&G, United Electric, Balboa, it is clear that the second prong, if you will, was just simply left out of that particular part of Muncie Trust. Give Mr. Manhart's argument its due. He says there is a fundamental difference, because I was going to ask him what policy and reason on earth would you treat the surety differently in a performance situation from a payment situation. And he is saying because there's a real difference there. You heard it. Yes, I did. What's your response? Twofold. I don't see a practical difference between the two. It is a tripartite contract, whether we're dealing with the payment bond or the performance bond, and I think the gut of the issue is contract. Well, if it's a performance bond, it's tripartite because it's between the surety and the contractor, right? And the government's the beneficiary. Yes. Right? Yes, sir. But not the signatory. I'm drawing a distinction between signatory and who has the right to enforce obligations on you. Right. Government's not a signatory on any of these bonds. Exactly. Because if they were, we would never be having these problems with the Tucker Act because everybody would have a contract with the government. Yes, sir. Right? That's correct. Contract funds need to be used to pay contract obligations. Whether it's under a performance bond or a payment bond, the reality of it is contract funds need to be used to pay contract obligations. Any distinction that there could possibly be, I think, is addressed and eliminated in the parliament case. The United States Supreme Court, in talking about that particular issue, and I'm referring now to page 371 U.S., page 139. The court says, Thus the same equitable rules as to subrogation and property interests in a retained fund were held to exist whether a surety completes a contract or whether, though not called upon to complete the contract, it pays the laborers in material. And so I think any distinction that the government is now arguing was put to bed in peril. They're saying the same equitable principles and the same equitable rights apply whether we're dealing with a performance bond loss or a loss under a payment bond. Well, it struck me, and I just wanted the government to hear this as well, it struck me that the simple-minded, if you will, question in this case is, does the surety in this case step into the shoes of the prime contractor, yes or no? Because once the stepping in is done, an insurance company in the West teaches us that the sovereign immunity had been waived through the Tucker Act. I believe that is the central issue, and I think there are at least 60 years of decisions that say that a payment bond surety steps into the shoes of the government contractor. Now, what right does the contractor have in this case to receive money from the U.S. government in this case? I have to answer the question this way. I apologize. I'm not being evasive, but I have to answer it this way. If you're looking at it from today, the contractor would not have a right. But I don't think that's the proper analysis. I think the way you have to look at it is to say at the time the government is a stakeholder and considering who to pay, who potentially has a right to those funds. We know when the job is finished, the government is a stakeholder. It's got to pay the money to somebody. And we also know under Perlman and common sense that if the contractor has paid all of its bills, then the contractor is entitled to receive the money. And so that's the critical time period. When the surety comes in and pays the bills, it becomes equitably segregated to the interests of the contractor. We are substituted for the contractor at that particular point. We have a right to the money. Let me just stop you for a second, sir. At that stage in time in this case, as I understand it, the surety gave the government notice that the surety had paid the subs and was standing there in line saying, You government have got some money. Contract is performed. Give that money, I believe, into some trust account or someplace where we're supposed to go, but don't give it to the contractor. Yes, sir. Is that right? Yes, sir. Actually, there were a series of notices. In the record, there's a series of notices starting when the surety was first notified that there was an outstanding claim and then actually evolving through a litigation process and ultimately culminating in the surety notifying the government that it had, in fact, paid the subcontractor. And then it was several months later that the government went ahead and paid the contractor. Are there cases at the common law or elsewhere that are comparable to this one? You've been quite candid in saying from today's point of view the government's already paid the contractor, the contractor got the money and went to Florida or whatever. Are you aware of any cases that deal with a surety who's in the soup yours is in now trying to sue whoever it was that paid the money off to the contractor? The cases that are currently pending? No, no, no. I think Mr. Manhart also agreed that if this were a stakeholder case, that if the government still had the money, I don't know, he would still be arguing no waiver of sovereign immunity, but if sovereign immunity was breached, the government would say, well, we don't have to pay twice, we'll pay the money. What I'm looking for is a precedent in which somebody had to pay twice. Yeah, there are several. Actually, I think in the amicus brief, there are several that are cited by the amicus. I have a couple of here, but I think this is a stakeholder case. I want to make that perfectly clear. I think the government was a stakeholder because it had no interest in the funds, and it was a stakeholder at the time that it made the improper dispersal to Innovative PBX. The cases that deal with that specific issue, Your Honor, I only have a couple here with me, but Newark Insurance Company v. United States, which is 169 FSEP 955. It's a court of claims decision from 1959. If I recall correctly, that one sets forth the concept that actually, for unrelated reasons, did not find in favor of assurity. There's the home indemnity case, and I apologize, I don't have the cite with me, but that is cited in our brief as well as in the amicus brief. And then one that I believe is particularly applicable to this case, because summary judgment was entered in favor of assurity, is International Fidelity Insurance Company v. United States, which is 25 Claims Court 469, 1992. In that case, Your Honor, as I mentioned, summary judgment was entered in favor of assurity. There is some time when you read these cases... But that's a 1992 Claims Court case. It wouldn't be binding on us. That's a case from what's the equivalent of the United States Court of Federal Claims now. That's correct, Your Honor. But there are court of claims decisions... Now, Newark is a golden oldie back from 1950-something, right? Yes. There are, following Home Indemnity, if I recall correctly, there's probably three or four other cases that follow this same fact pattern in which the Federal Circuit or predecessor courts have clearly said that the government breaches its duty as a state lawyer if after notice it makes payment to... Well, Newark was blessed because it was cited in Balboa. Yes, sir. And Balboa was blessed in Insurance Company of the West. Yes. Home Indemnity was another Claims Court case. I apologize, Your Honor, I don't recall... There is a Home Indemnity cited in your brief or cited in the government's brief, I'm sorry. I'm showing it at 376 F. 2nd, 890, Court of Claims, 1967. Mm-hmm. Okay. And by the way, those cases are cited in the amicus brief at pages 14 through 15. Where I think this leaves, what I think the state of the law is, it's exactly what it's been for many, many years, that nothing about ICW or Blue Fox changes the fact that upon completion of a project, the government's a stakeholder of those funds. Those funds have to be paid to somebody. When it receives notice from a surety that it should withhold the funds, the government has an obligation as a stakeholder to hold those funds. Once the surety makes payment, it acquires through subrogation the rights of the subcontractor at pay as well as the rights of the contractor whose debt is discharged. That is what provides the jurisdictional basis. And so we would ask this court to affirm the judgment in order of the Court of Federal Claims. All right. Thank you very much. We hear from the government in rebuttal. Thank you, Your Honor. Just to be brief, I wanted to stress that the principles of subrogation arise and is permanent in many other cases referred to that subrogation is a creature of equity. It's not a creature of contract. What Blue Fox tells us is that those cases do not describe the liability of the United States. Prior to Perlman, we didn't have these issues. Blue Fox made clear that the law as established by those cases do not define the liability of the United States. You're right that Insurance Company of the West was wrongly decided on the performance On the performance? No. These are complicated matters. No, because of Blue Fox. It has to be. No, under the performance bond, we understand there are contractual duties. Insurance Company of the West recognized that the Tucker Act was contract liability. And as I would read Insurance Company of the West, it found a basis for the transfer of that contract right, the performance obligations in that circumstance, the financing of performance, ran to the United States. So the right of the contractor transferred. That is exactly the reason we are here contesting the extension of that to the payment bond circumstance. The government has no rights running to that subcontractor. The only way one reaches the subcontractor's rights is to take substantive equitable principles. And I think the key is the court referred to In USF&G, the court of claims attempted to reconcile Herman and Muncie Trust and found that the way to do that was that the surety can take the privity rights of the contractor and the equitable rights, the substantive rights of the subcontractor, combine them into a right that neither the subcontractor or the subcontractor possesses, but a completely independent right owned only by the surety. In subrogation law, the surety, through the rights it obtains from the sub when it pays the sub, has a claim against the stakeholder, whether it's a bank or whoever. In suretyship law in the grows, we all had a very nice conversation about that. And we agreed that in some circumstances at least, the surety, and certainly the restatement recognizes very clearly that the surety steps into the shoes of the contractor in the situation I'm just describing. To go after monies that are there that the person for whom the contract is performed, the government or whomever else, doesn't have a right to keep it. As a matter of substantive law of equity, which is why if you look at the National American Supreme, they don't assert a contract right. They assert an independent free-standing right. On your theory, in a stakeholder case, let's assume the contractor has finished performance. The government has, it's a big government contract, and the government has got $70 million of money that's supposed to go to the contractor. And the contract is fully performed. But the surety had to step up and pay the subs. The surety steps up and pays the subs. And then the surety goes over against the government and says, give me the money. And the government says, no, I'm not going to give you the money. And the contractor has defaulted. The government just gets to keep the money? No, if the contractor has performed, the contractors owe the money. The contractor defaulted or not, its successor or its corporate wife can sue the United States for its performance because our rights run to them. And it has rights against the United States. In the payment context, there isn't such a thing. And what we're asking for is not a different law of subrogation, but a recognition of the right. The subrogation transfers existing rights, doesn't create new ones. And the existing rights here, when you look at it, by the subcontractor, are not rights that run to us. And the contractor, too. There's nothing violated in the contract here. All right. Thank you very much. Thank both counsel. The case is submitted.